# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-CR-00222-GKF-2 |
| ) | |
| JAMES ALLEN QUAPAW, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes before the court on the Expedited Motion to Revoke Detention Order [Doc. 26] of defendant James Allen Quapaw. For the reasons set forth below, the motion is denied.

### I.    Background/Procedural History

On July 19, 2022, a grand jury returned an Indictment charging Mr. Quapaw with one count of Felon in Possession of Firearms and Ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and one count of Sale and Disposal of a Firearm to a Prohibited Person pursuant to 18 U.S.C. §§ 922(d)(1) and 924(a)(2). [Doc. 2]. Mr. Quapaw was arrested on July 22, 2022, and appeared by video before U.S. Magistrate Judge Susan E. Huntsman that same day. [Doc. 14]. The government moved for pretrial detention pursuant to 18 U.S.C. § 3142(e) and (f), based on both the need to assure Mr. Quapaw's appearance as required and the safety of any other person and the community. [Doc. 12].[1]

---

[1] During the detention hearing held on July 25, 2022, there was some suggestion that the government had moved for detention based solely on the need to assure the safety of any other person and the community, and had not sought detention based on the need to assure defendant's appearance as required. However, in the Motion for Detention [Doc. 12], the government clearly moved for pretrial detention based upon both. [Doc. 12].

Magistrate Judge Huntsman conducted a detention hearing on July 25, 2022. [Doc. 19]. During the hearing, the government proffered the testimony of John Butler, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives, who would state that, on December 30, 2021, Mr. Quapaw and another individual broke into the residence of D.M. by kicking in the door to the house upon information that there were valuables including firearms in the house. Agent Butler would testify that, sometime between December 30, 2021 and January 4, 2022, Mr. Quapaw sold the firearms to his co-defendant in this case, Michael Tiffany, knowing that Mr. Tiffany was a convicted felon, in exchange for methamphetamine and cash.

The government further proffered that the evidence would show that, on January 5, 2022, Mr. Quapaw facilitated a firearm transaction between Mr. Tiffany and an ATF confidential informant pursuant to which the confidential informant was to purchase the stolen guns. The confidential informant did, in fact, purchase one of the stolen guns for $400 with $100 going to Mr. Quapaw for facilitating the transaction.

During the detention hearing, the government also submitted the Pretrial Services Report prepared by U.S. Probation Officer Aaron Tyler. The Pretrial Services Report indicates that Mr. Quapaw, who is forty-one, has been unemployed for approximately eighteen (18) months. He resides with his father, sister, and long-term girlfriend in Miami, Oklahoma. Prior to living with his father, Mr. Quapaw was incarcerated from 2014 to 2019.

With respect to Mr. Quapaw's health, the Pretrial Services Report states that Mr. Quapaw has suffered from abdominal pain from an indeterminate cause for the past four years. Mr. Quapaw stated that he had successfully completed inpatient treatment for alcohol abuse. However, Mr. Quapaw reported that he has been a daily user of methamphetamine since his release from custody in 2019.

The Pretrial Services Report set forth several failures to appear on previous charges, the most recent of which being on February 28, 2014 in Ottawa County District Court Case No. CM-2013-00925.  Additionally, the Pretrial Services Report identifies multiple prior revocations and acceleration of sentences.  Further, Mr. Quapaw was convicted of two criminal separate offenses while under supervision.  Based on the foregoing, Probation Officer Tyler recommended that Mr. Quapaw be detained pending trial.

In response, defense counsel proffered that, for the last four years, Mr. Quapaw has suffered from intense abdominal and intestine pain.  Earlier this year, defendant underwent a hernia surgery and left testicle removal.  However, Mr. Quapaw still experiences significant pain and continues to seek medical treatment.  Further, with respect to Mr. Quapaw's methamphetamine addiction, defense counsel stated that Mr. Quapaw acknowledges his problem and would like to take advantage of the judiciary's resources to overcome his drug addiction.

As to the charged conduct, defense counsel proffered that the allegedly transferred firearm was a bolt-action hunting rifle, not a high capacity firearm.

Defense counsel also directed the Magistrate Judge to Mr. Quapaw's 2014 charge and conviction for Endeavoring to Manufacture Controlled Dangerous Substance – Methamphetamine in Delaware County Case No. CF-2014-00164B.  Prior to his trial and conviction, Mr. Quapaw had been released on bond.  Defense counsel proffered that Mr. Quapaw had attended all required court appearances and there were no failures to appear in that case.

Finally, defense counsel proffered that Mr. Quapaw's mother, Susan Wood, has offered to let Mr. Quapaw reside with her pending trial.  Ms. Wood has reliable transportation and does not keep any weapons in her home.

At the close of the detention hearing, Magistrate Judge Huntsman ordered that Mr. Quapaw be detained pending trial, concluding that the government had satisfied its burden to demonstrate that no condition or combination of conditions would reasonably assure (1) the safety of any other person and the community or (2) defendant's appearance as required.  [Doc. 20].

On August 4, 2022, Mr. Quapaw filed the Motion to Revoke Detention Order pursuant to 18 U.S.C. § 3145(b).  [Doc. 26].  The government responded in opposition.  [Doc. 34].  On August 11, 2022, Mr. Quapaw filed a reply.  [Doc. 35].

## II.   Standard

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The court's review is *de novo*. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  The court has reviewed the transcript of the July 25, 2022 detention hearing, as well as the Pretrial Services Report presented to Magistrate Judge Huntsman.  Additionally, the court has reviewed the motions and other filings in this case.  Based on the foregoing, the court has determined that a sufficient factual record exists and therefore an additional hearing is unnecessary.[2]

"Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'"  *Cisneros,* 328 F.3d at 616 (quoting 18 U.S.C. § 3142(e)).  To determine whether there are conditions of release

---

[2] The decision whether to hold an evidentiary hearing is discretionary. *United States v. Daughtry*, No. 19-CR-0161-CVE, 2019 WL 4731949, at *2 (N.D. Okla. Sept. 27, 2019) (citing *United States v. King*, 849 F.2d 485, 490-91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985)); *see also United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019).  The court notes that neither the government nor Mr. Quapaw requested an additional evidentiary hearing. [Doc. 26; Doc. 34; Doc. 35].

that will reasonably assure defendant's appearance as required and the safety of any other person and the community, the court must take into account the available information concerning the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The government must prove risk of flight by a preponderance of the evidence, and danger to any other person or the community by clear and convincing evidence. *Cisneros,* 328 F.3d at 616 (citing 18 U.S.C. § 3142(f)).[3]

Prior to considering the merits-based arguments, the court notes that, in its response, the government argues that Mr. Quapaw's motion should be summarily denied because defense counsel failed to consult with the government in advance of filing the motion. Pursuant to Local Criminal Rule 47-4, "[a] motion must state on the first page whether or not it is opposed. If

---

[3] Based on the nature of the charges against Mr. Quapaw, the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community is inapplicable. *See* 18 U.S.C. § 3142(e).

opposed, the motion must recite whether concurrence was refused or explain why concurrence could not be obtained. A motion that fails to recite concurrence of each party *may be* summarily denied." LCr47-4 (emphasis added). Thus, the Rule is discretionary. Given that Mr. Quapaw's motion raises an issue of first impression in this district as to the required procedures for pretrial detention hearings, the court will not summarily deny the motion and, instead, will rule upon its merits.

### III.  Proceeding By Proffer

Mr. Quapaw argues the government cannot meet its burden to prove detention is warranted under § 3142 by "proffer," but, instead, must offer *evidence* to justify detention. [Doc. 26, pp. 12-15]. Thus, the court must consider the requirements of § 3142.

In interpreting a statute, the court's goal "is to 'ascertain the congressional intent and give effect to the legislative will.'" *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021) (quoting *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018)). To do so, the court "first examine[s] the statute's plain text." *Id.* "If the words of the statute have a plain and ordinary meaning, we apply the text as written." *United States v. Ailon-Ailon,* 875 F.3d 1334, 1338 (10th Cir. 2017) (quoting *Fruitt v. Astrue*, 604 F.3d 1217, 1220 (10th Cir. 2010)). "[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

In support of his argument, Mr. Quapaw directs the court to the standard for pretrial detention—specifically, that the Bail Reform Act requires the government to prove that no condition or combination of conditions will reasonably assure either (i) his appearance as required

by a preponderance of the evidence and (ii) the safety of any other person and the community by clear and convincing evidence. Mr. Quapaw contends "[t]hese standards, as their names suggest, are *evidentiary* standards. This requires evidence." [Doc. 26, p. 12 (emphasis in original)].

However, § 3142 specifically provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of *information* at the hearing." 18 U.S.C. § 3142(f) (emphasis added). Thus, the plain language of the statute does not limit the presentation to that which would be admissible as evidence. Likewise, subsection (g) requires that the judicial offer, in determining whether adequate conditions of release exist, shall "take into account the available *information* concerning" the relevant factors, not evidence. 18 U.S.C. § 3142(g) (emphasis added). "Information" is "knowledge obtained from investigation, study, or instruction." *Information*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 599 (10th ed. 1994). The plain meaning of the term does not require personal knowledge, expert qualification, authentication, or any of the other hallmarks of evidence. Further, as Mr. Quapaw points out, the statute states: "The *facts* the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f) (emphasis added). The statute therefore does not require the judicial officer to use *evidence* to support the finding.[4] *See also* Bryan A. Garner, *Fact*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "fact" to include alleged events and circumstances).

---

[4] Notably, the requirement that "risk of flight" (or that no condition or combination of conditions will reasonably assure defendant's appearance as required) be proved by a preponderance of the evidence does not appear in the statute. Rather, the statute is silent as to the government's burden, and the "preponderance of the evidence" standard has been *judicially* imposed. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ("While the Act requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community, it is silent as to the level of proof required to establish risk of flight. This circuit, however, has ruled that such a finding need only be supported by a 'preponderance of the evidence.'"); *Cisneros,* 328 F.3d

Mr. Quapaw points out that the statute explicitly provides that a detainee may "present information by proffer or otherwise," 18 U.S.C. § 3142(f), but is silent as to whether the government may proceed by proffer. Mr. Quapaw argues that, pursuant to the negative implication canon *expressio unius est exclusion alterius*, the grant of the right to the detainee implies its exclusion to the government. [Doc. 26, pp. 12-13]. However, "[t]he canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002). Section 3142 explicitly provides certain rights to defendants, including the "right to present information by proffer or otherwise." 18 U.S.C. § 3142(f). But the section includes no comparable provision setting forth those rights afforded to the government from which the "right to present information by proffer" is omitted. Thus, *expressio unius est exclusion alterius* is inapplicable.[5]

For the reasons set forth above, the statute plainly does not require the government to present evidence rather than proceed by proffer. The court's interpretation is supported by the statute's legislative history. *See United States v. Martinez*, 890 F.2d 1088, 1092 (10th Cir. 1989) (considering legislative history of Bail Reform Act, 18 U.S.C. § 3146); *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (considering legislative history of Bail Reform Act).

Federal courts have recognized that the "procedural requirements for the pretrial detention hearing set forth in § 3142(f) are based on those of" the District of Columbia's pretrial detention

---

at 616 (citing *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990)). Thus, nothing in the statute's plain language with respect to assurance of defendant's appearance supports Mr. Quapaw's argument.

[5] Alternatively, applying the doctrine would result in the government not being afforded the right to present witnesses, cross-examine witnesses, or present information.

statute, D.C. Code § 23-1322 (1973).  *See United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).[6]  The legislative history of that statute recognized

> As explained above, bail hearings under the Bail Reform Act, which frequently result in detention of the accused, proceed primarily by way of proffers.  They are not formal trials requiring strict adherence to technical rules of evidence.  If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony.  But the discretion should be left to the court without imposing on it the burden of limiting admissibility to that it would permit a jury to hear.

H.R. REP. NO. 91-907, at 184 (1970).  Further, the legislative history indicates that the detention hearing contemplated by the statute "is not designed to afford defendants a discovery device.  Discovery is to be obtained pursuant to the rules of court." *Id.* at 183.  The legislative history of the national Bail Reform Act of 1984 explicitly states that "[i]t is the intent of the Committee to *retain current law* so that any information presented or considered in any of the release or detention proceedings under this chapter need not conform to the rules of evidence applicable in criminal trials."  S. REP. NO. 98-225, at 22 n.65 (1983).  Thus, Circuit Courts of Appeals have concluded that Congress was aware of this history and, in enacting the Bail Reform Act of 1984, did not intend for detention hearings to become "mini-trials" or a "discovery tool" for the defendant. *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) ("[T]he thrust of the legislation is to encourage informal methods of proof.  Congress did not want detention hearings to resemble mini-trials."); *Delker*, 757 F.2d at 1396.

Because "the thrust of the legislation is to encourage informal methods of proof," and the rules of evidence are inapplicable, Circuit Courts of Appeals have uniformly interpreted the Bail Reform Act's silence as to the government's manner of proof to "le[ave] open what kinds of information would be a sufficient basis for release, choosing to leave the issue to the judgment of

---

[6] The District of Columbia Court of Appeals upheld the constitutionality of D.C. Code § 23-1322 in *United States v. Edwards,* 430 A.2d 1321 (D.C. 1981).

the courts on a case-by-case basis." *Martir,* 782 F.2d at 1145.  That is, based on the Bail Reform Act's clear legislative history, the statute's silence does not give rise to a negative inference, but, instead, recognizes the court's long-standing procedural discretion as to the government's manner of proof.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (citation omitted) ("[T]he Government regularly proceeded by way of proffer under the District of Columbia bail statute that served as the model for the Act.  That it could continue to do so under the nationwide Act literally goes without saying."); *see also United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *see generally United States v. Acevedo-Ramos*, 755 F.2d 203, 208 (1st Cir. 1985) (discussing use of hearsay).  Thus, in detention proceedings, both the government and defense may proceed solely by proffer.[7]  *See Smith*, 79 F.3d at 1210 ("Every circuit to have considered the matter, however, has rejected that [negative] inference and permitted the Government to proceed by way of proffer."); *see also United States v. Austin*, 947 F.2d 954, at *2 n.2 (10th Cir. 1991) (unpublished table decision) (citing *Gaviria*, 828 F.2d at 669; *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986)) ("The facts recited above were established by proffer of evidence, a proper procedure in detention proceedings.")[8]; *United States v. Lewis*, No. 94-40044-01-SAC, 1994 WL 579928, at *3 (D. Kan. Sept. 29, 1994).[9]

---

[7] Of course, "[i]f the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony."  *Delker,* 757 F.2d at 1395 (quoting *Edwards,* 430 A.2d at 1334).

[8] "Unpublished decisions are not precedential, but may be cited for their persuasive value."  10th Cir. R. 32.1(A).

[9] Respectfully, the decision of U.S. Magistrate Judge for the District of Massachusetts Robert B. Collings cited by Mr. Quapaw is an outlier and not persuasive to this court.  *See United States v. Robinson,* 820 F. Supp. 2d 146 (D. Mass. 2011).  Magistrate Judge Collings does not analyze any of the authorities cited herein, including the decision of the First Circuit Court of Appeals in *Acevedo-Ramos*.

Mr. Quapaw urges the court to disregard the foregoing case law, as he asserts that the Circuit Courts have misread the legislative history through a series of errors. *See* [Doc. 35, pp. 8-12]. First, Mr. Quapaw contends that courts have relied too broadly on the fact that § 3142(f)'s procedural requirements are based on those of the District of Columbia statute, D.C. CODE § 23-1322. Next, and more specifically, Mr. Quapaw argues, in *Matir,* the Second Circuit improperly and "without any analysis" relied on dicta from the D.C. Court of Appeals' decision in *United States v. Edwards* that "information presented to the judicial officer by . . . the government [at a detention hearing] may be by proffer." [Doc. 35, p. 9].

Although Mr. Quapaw criticizes the District of Columbia Court of Appeals' decision in *Edwards* as lacking in analysis, as discussed above, the legislative history of § 23-1322 makes clear that the government may proceed by proffer, stating: "As explained above, bail hearings under the Bail Reform Act, which frequently result in detention of the accused, proceed primarily by way of proffers. They are not formal trials requiring strict adherence to technical rules of evidence." H.R. REP. NO. 91-907, at 184 (1970). Thus, it is clear that the government could proceed by proffer under § 23-1322. Section 3142(f) carries this provision forward. *Compare* D.C. CODE § 23-1322(c)(5) (1970) ("Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law.") *with* 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* S. REP. NO. 98-225, at. 22 (1983) ("As is currently provided with respect to information offered in bail determinations, the presentation and consideration of information at a detention hearing need not conform to the rules of evidence applicable in criminal trials.") (internal footnote omitted).

Mr. Quapaw cites the following legislative history as prohibiting the government from proceeding by proffer:

> Because of the importance of the interests of the defendant which are implicated in a pretrial detention hearing, the Committee has specifically provided that the facts on which the judicial officer bases a finding that no form of conditional release is adequate reasonably to assure the safety of any other person and the community, must be supported by clear and convincing evidence. This provision emphasizes the requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that a pretrial detention is necessary. Thus, for example, if the criminal history of the defendant is one of the factors to be relied upon, clear evidence such as records of arrest and conviction should be presented. . . . Similarly, if the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threats to a witness, that tend to indicate that the defendant will pose a danger to the safety of the community if released.

S. REP. NO. 98-225, at 22 (1983). Mr. Quapaw reads too much into the foregoing passage. Congressional recognition of the requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that pretrial detention is necessary is not inconsistent with a government proffer. Rather, it simply reinforces the well-settled principle rooted in D.C. CODE § 23-1322 that the judicial officer must be satisfied with the proffer. That is, the judicial officer must be satisfied based on the representation of the evidence in the proffer that a sufficient evidentiary basis exists to warrant detention. *See* H.R. REP. NO. 91-907, at 184 (1970) ("If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony.").[10] Further, Mr. Quapaw's interpretation is inconsistent with the purpose of the Bail Reform Act to provide a "workable" statute that is "narrow in scope." S. REP. NO. 98-225, at 7 (1983). In furtherance of this purpose, Congress "refrained from specifying what kinds of

---

[10] The court further notes that the discussion cited by Mr. Quapaw is limited to establishing that no condition or combination of conditions will reasonably assure the safety of any other person and the community. It includes no discussion of, or reference to, an evidentiary basis that no condition or combination of conditions exists that will reasonably assure the appearance of defendant as required.

information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgment of the courts acting on a case-by-case basis." S. REP. NO. 98-225, at 19 (1983). For the foregoing reasons, the language of § 3142 permits the government to proceed by proffer.

In addition to his statutory arguments, Mr. Quapaw contends that permitting the government to proceed by proffer "raises *serious* due process concerns." [Doc. 26, p. 14 (emphasis in original)]. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). The due process inquiry is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see also Smith*, 79 F.3d at 1210 ("The process that is due is only that which is required by and proportionate to the purpose of the proceeding."). Thus, "not every potential loss of liberty requires the full panoply of procedural guarantees available at a criminal trial." *Delker,* 757 F.2d at 1397; *see also Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (concluding that "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses"— are not essential for a probable cause determination).

The U.S. Supreme Court has concluded the procedural safeguards included in the Bail Reform Act are sufficient to withstand a facial procedural due process challenge. *United States v. Salerno*, 481 U.S. 739, 752 (1987). This is because pretrial detention is regulatory, not punishment. *Id.* at 748. The Court also noted that the protections afforded by the Bail Reform Act

"are more exacting than those we found sufficient in the juvenile context" and, further, "far exceed[ed]" what the Court required in *Gerstein* to effect limited post-arrest detention until a probable cause determination is made. *Id.* at 752.

"A pretrial detention hearing . . . is neither a discovery device for the defense nor a trial on the merits," *Smith*, 79 F.3d at 1210, and permitting the government to proceed by proffer does not violate a defendant's procedural due process rights. Rather, the liberty interest at stake is akin to that considered in *Gerstein* and the same standards apply. *Delker*, 757 F.2d at 1397 ("The effect of the findings in a detention hearing and a preliminary hearing (*Gerstein*) hearing is the same: each hearing determines whether the accused may be detained pending trial."). Mr. Quapaw is not entitled to "the full panoply of adversary safeguards." *Gerstein*, 420 U.S. at 119. The court concludes "[a] right to require the Government to produce its witnesses against him would complicate the hearing to a degree out of proportion to the liberty interest at stake." *Smith*, 79 F.3d at 1210. Permitting the government to proceed in a pretrial detention hearing through proffer does not offend due process.

### IV. *De Novo* Review of Detention Decision

Based on its independent, *de novo* review of the record, the court concurs with Magistrate Judge Huntsman's findings and concludes that the government has shown by a preponderance of the evidence that there are no conditions, or combination of conditions, of release that will reasonably assure defendant's appearance as required.

Looking to the first § 3142(g) factor, Mr. Quapaw is charged with one count of Felon in Possession of Firearms and Ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and one count of Sale and Disposal of a Firearm to a Prohibited Person pursuant to 18 U.S.C. §§ 922(d)(1) and 924(a)(2). Thus, the charged offenses involve both the illegal possession of firearms

and ammunition and providing a firearm and ammunition to another prohibited person. Further, Mr. Quapaw faces up to ten years in prison if convicted.[11] Thus, the court finds that the first factor weighs in favor of pretrial detention.

With regard to the second factor, the weight of the evidence, the government proffered that there was an eye witness to a December 30, 2021 incident in which Mr. Quapaw and another individual allegedly kicked in the door to D.M.'s house to steal firearms, including those charged in the Indictment. The government also proffered that video and audio recordings exist showing a January 5, 2022 firearms transaction facilitated by Mr. Quapaw. During the January 5, 2022 transaction, an ATF confidential informant purchased one of the firearms stolen from D.M.'s residence, as well as an unrelated firearm, for $400 with $100 going to Mr. Quapaw. Mr. Quapaw contends that evidence regarding the January 5, 2022 controlled buy is "irrelevant" because Mr. Quapaw is not charged with any offense arising from the alleged transaction. [Doc. 26, p. 16]. However, based on the government's proffer, evidence exists that Mr. Quapaw stole a firearm. Evidence exists that Mr. Tiffany subsequently transferred that firearm to an ATF confidential informant in a transaction facilitated by Mr. Quapaw. Thus, the government proffers that evidence exists from which one could reasonably infer that Mr. Quapaw both possessed and then transferred a firearm to Mr. Tiffany as charged in the Indictment.

---

[11] Section 924(a)(2) was amended effective June 25, 2022 and no longer includes violations of subsections (d) and (g) of section 922. Rather, effective June 25, 2022, pursuant to subsection 924(a)(8), persons found to have knowingly violated subsection (d) or (g) of section 922 now face up to fifteen years imprisonment, rather than ten. However, the Ex Post Facto Clause of the U.S. Constitution "prohibits application of laws that 'inflict a greater punishment for the crime than was in . . . place at the time the crime was committed.'" *United States v. Womack,* 833 F.3d 1237, 1241 (10th Cir. 2016) (quoting *United States v. Vernon,* 814 F.3d 1091, 1103 (10th Cir. 2016)). Thus, the court looks to the statute in effect on the date of the alleged crimes—December 30, 2021 through January 4, 2022.

Insofar as defense counsel complains that he was not provided the evidence in advance or during the hearing, as previously stated, a pretrial detention hearing is not "a discovery device for the defense." *Smith*, 79 F.3d at 1210. Further, the court is mindful that, at this stage of the proceedings, the government need not offer all of its evidence. *See Cisneros*, 328 F.3d at 618. The government's proffer is sufficient to persuade the court that the evidence against Mr. Quapaw is strong. Thus, the weight of the evidence favors detention.

The court gives significant weight to the third factor—the history and characteristics of defendant. The Pretrial Services Report includes seven failures to appear on previous charges, the most recent of which being on February 28, 2014 in Ottawa County District Court Case No. CM-2013-00925.[12] Mr. Quapaw points out that four of the failures to appear are over twenty years old and most occurred in misdemeanor cases. Regardless of the circumstances, the sheer number of prior failures to appear is of substantial concern to the court.

Additionally, the Pretrial Services Report identifies multiple prior revocations and acceleration of sentences. Further, Mr. Quapaw was convicted of two criminal separate offenses while under supervision.

Mr. Quapaw urges the court to give little weight to his prior non-compliance in light of his prior appearances in Delaware County Case No. CF-2014-001643. However, a single case is not persuasive in light of Mr. Quapaw's numerous other failures to appear. Further, the court notes that Mr. Quapaw committed the offense charged in that case while under supervision, such that Mr. Quapaw's asserted compliance is not particularly persuasive. Mr. Quapaw also directs the court to his ongoing medical issues. However, Mr. Quapaw's self-reported chronic abdominal pain is not of the nature to reasonably assure the court that it would prevent him from flight.

---

[12] Mr. Quapaw was incarcerated from 2014 to 2019.

The court acknowledges that Mr. Quapaw has strong community ties to Oklahoma and that his mother, Susan Wood, has offered to let Mr. Quapaw reside with her pending trial and "assume [his] supervision." While these facts may weigh against detention, they are far outweighed by Mr. Quapaw's history of disregarding court orders, as well as his criminal history. The court observes that Mr. Quapaw had strong ties to the community during his prior failures to appear, but he failed to do so. Further, given Mr. Quapaw's admitted daily methamphetamine use, the court is not persuaded that Ms. Wood, despite her best intentions, "is able reasonably to assure the judicial officer that the [Mr. Quapaw] will appear as required and will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3142(c)(B)(i).

Finally, the government proffers that the evidence will show that Mr. Quapaw both possessed a firearm and struggles with an addiction to methamphetamine. Additionally, although not charged, the government asserts that the evidence will show that Mr. Quapaw broke into the home of another person by force—specifically, kicking down the door. Further, Mr. Quapaw's criminal history includes convictions for assault and assault with a dangerous weapon, as well as convictions for driving under the influence and driving without a license which are particularly concerning to the court in light of Mr. Quapaw's current addiction to methamphetamine. Thus, some evidence exists that Mr. Quapaw poses a danger to the community, although this factor is not determinative.

Based on consideration of the four statutory factors, the court finds and concludes that there are no conditions or combination of conditions that will reasonably assure Mr. Quapaw's appearance as required. And "[u]nmanageable flight risk, if shown by a preponderance of the evidence, is enough to justify detention." *United States v. Munoz*, No. 22-2047, 2022 WL 1671068, at *4 (10th Cir. 2022); *see also United States v. Valdez*, 682 F. App'x 684, 686 (10th

- 18 -

Cir. 2017) (unpublished) ("We need not consider dangerousness, however, because the government adequately established that he presents a flight risk."). Thus, the court does not consider whether Mr. Quapaw poses a danger to any other person or the community. Defendant's motion to set conditions of pretrial release is denied, and Mr. Quapaw shall be detained pending trial pursuant to the directions previously imposed by Magistrate Judge Huntsman. [Doc. 20, p. 3].

V.    Conclusion

WHEREFORE, the Expedited Motion to Revoke Detention Order [Doc. 26] of defendant James Allen Quapaw is denied.

DATED this 15th day of August, 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE